Daniel, J.
 

 The bill was filed by Michal Hearne and Theodore Hearne, plaintiffs, against Kevan and Hamilton, defendants, and the sole prayer of the bill is to enjoin the defendants from proceeding to sell under an execution, which they have caused to be levied upon the undivided share of Danford Richards in certain negroes. Upon the bill and answer the facts appear to be as follows: Edward Hall on the 3d day of January, 1821, made his will. After providing for his wife, he devises and bequeaths to Lawrence H. Hearne lands, negroes and other personal property. The testator then says, <! All the remainder of my negroes, after the. death of my wife, I will and desire, maybe equally divided between my grand-children, the children of Michael and Martha Hearne, to them and their heirs forever.” The testator’s wife died, and he then on the 28th day of January, 1821, added a codicil to his will, by which he devised and bequeathed that all the property, which he had given in the original will to Lawrence H. ¡Hearne,
 
 “
 
 should be vested in Michael Hearne, with all the profits and interest thereof, until/his son, the said Lawrénce, shall attain lawful age. And I furthermore desire that the negroes which I have left to the other children of the said Michael Hearne shall be governed by the same circumstances.” The will was admitted to probate
 
 *36
 
 at November Session, 1823, of Edgcomb County Court. Michael Hearne then qualified as executor and took into his possession all the slaves and other personal estate. Michael Hearne at the death of the testator had five children, besides Lawrence, viz. Mary, Martha, Theodore, Joseph and Michael. Mary, in the year-1833, married Danford Richards, when she was upwards of fifteen years of age, and died a short time thereafter. 'Michael Hearne had kept the slaves in his possession, using them as his own, from 1823 to 1839.
 
 At
 
 February Court, 1839, two of the four surviving younger children, viz. Martha and Theodore filed their petition against the other two, stating in it that they were then of full age, and that they were all four tenants in common of the slaves bequeathed to them by their grand-father, and prayed a division. At the foot of this petition is the following entry/ ‘.‘We-accept service of the foregoing petition and submit to any decree the Court may make in the premises. Michael Hearne, Guardian to Joseph E. Hearn and Michael Hearne, his minor children.” The two plaintiffs in the petition had a decree, and eight of the sixteen slaves were allotted to them. Martha, on her marriage, conveyed her lot of these slaves to her brother Theodore as trustee in her marriage settlement. Richards, the husband of Mary, was not a party to the proceedings in the abovementioned petition. Kevan and Hamilton, at August Sessions of Edgcomb County Court 1839, obtained a judgment against Danford Richards, for $2,974 20, and issued execution, and it was levied on the one undivided fifth part of the said sixteen slaves, as belonging to Danford Richards. The plaintiffs, in their bill allege, First, that the executor of Edward Hall never assented to the legacy; Secondly, that as Mary, the wife of Richards, died before she arrived at full age, the legacy had never vested in Richards, so that his creditors could take it in execution after the .death of the wife; and, Thirdly, that a sale under the execution may cloud their title and involve them in expensive litigation. An injunction was granted. On the coming in of the aniwer, disclosing the facts as stated above, a motion was made to dissolve the injunction, which motion was overruled by the Court and the defendants appealed.
 

 
 *37
 
 First, it appears that Edward Hall, by his will, gave the one undivided fifth part of the slaves in question to Michael Hearne, until his daughter, Mary, should arrive to the age of twenty-one years, then to the said Mary. The plaintiff, Michael Hearne, insists that he holds these negroes as exe ■ cutor; and we are disposed to believe that he never made an express assent to the legacy. But the law does not require an express assent; it may be implied from particular acts. And if an assent be to the particular tenant of a chattel. it will enure to the benefit of the remainder-man, for the particular estate and the remainder constitute but one estate. Williams on Ex. 847. The executor’s assent to his own legacy may, as well as his assent to that of another legatee, be either express or implied. It may be implied from his conduct; as if an executor, in the manner of administering the property, does any act which shows he has assented to the legacy, that shall be taken as evidence of his assent
 
 ■
 
 but if his acts are referable to his character as executor, they are not evidence of his assent to the legacy. Williams on Ex. 850.
 
 Doe
 
 v
 
 Sturges, 7
 
 Taunton 223. The testator says in his will: “ I am but little in debt.” The bill does not pretend that there were debts outstanding. The answer says there were no debts to pay. The same person, executor and particular legatee, had possession of the slaves for eleven years before the death of Mary,'using them as his own. He makes no return to Court of any inventory, account of sales, or account current of the*estate. And again, he, in 1839, admits, by his acts in the petition, that the other four children had the legal estate in their legatory interest in the slaves. When did he assent to their legacies ? There is no evidence as to the particular time when he did it. We must say that his acts are evidence, that he assented* to hold the slaves in his own right as legatee, and that too before the death of Mrs. Richards. Tf)e rernainder to her, therefore, was a legal, vested remainder in one fifth of all the said slaves. Richards had a right to assign that interest, as by possibility it might have fallen into actual possession during the coverture. 1 Roper on Husband and Wife, 249. 2 RoT
 
 *38
 
 per on Hus. and Wife, 509 to 522, In the case of
 
 Knight
 
 v
 
 Leak,
 
 2 Dev. & Bat. 133, we decided that a vested remainder in slaves might be sold, during the life of the tenant ^01' unc*er a
 
 fi- fa‘
 
 against the person entitled to such re. mainder in right of his wife. But it is said, that in that case the levy was during the coverture ; and that, if the wife dies before execution issues, the property in remainder would belong to the administrator of the wife¡ and not to the husband by virtue of the marriage, and that the Sheriff, then, could not selL it under an execution against him.' In the case of
 
 McAlister
 
 v
 
 Gilmore,
 
 1 Ire. Ecp Rep. 22, cited to support this position, the point was not raised or decided. It is further argued, that, if the wife had survived her husband, the remainder would have belonged to her, as a chose in action; and not to the executor of the husband ; and, therefore, it is said, if the husband survives, and the particular tenant of the legacy, at the expiration of his estate, refuses to surrender it, the husband can get it only as the administrator of his wife. We have just seen that when an executor assents to the legacy to the particular tenant, the assent enures to the remainder-man, so as to change both estates from equitable into legal estates, and that the particular estate and the remainder then constituted in law but one estate, "Was not the possession, then, of the particular tenant, after the assent, the possession also of her in remainder
 
 ?
 
 How can it be pretended that his possession is adverse to her, so as to make her interest a chose in action, before an actual reduction of the remainder into possession ? If the wife were' now alive, the creditors of Richards might levy and sell this remainder in the slaves. Shall the death of the wife change the rights of the creditors on this identical fund ? We think not; and we are of the. opinion that the defendants had a right to levy their execution on the undivided fifth .of the whole of the slaves, or any number of them, which came to the five younger children of Michael Hearne, from their grand-father,' Edward Hall.
 

 As to the allegation that a sale may cloud their title and involve them in expensive litigation, several answers present
 
 *39
 
 themselves. In the first place, the bill is not framed with a view to the adjustment of the respective rights of the tenants in common, and is a creditor to wait until they choose to ascertain and settle them
 
 ?
 
 In the next place, no facts are shown or alleged, why a division may. not be made as fairly and as cheaply after an assignment, by execution sale, of Richards’ share as before. The purchaser at that sale will succeed to his rights precisely, and to none other.
 

 .We think that the injunction should be dissolved with costs.
 

 Per Curiam. Ordered that this opinion be certified to the Court- below, &c„'